**R.S. MARTIN, Jr., Plaintiff–Appellant,**

v.

**AMERCABLE CORP., A DIVISION OF ASSOCIATED MATERIALS, INC.,**
**Defendant–Appellee.**

**No. 92–1864.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1992.

Decided April 12, 1993.

William Waddell, Little Rock, AR, argued for plaintiff-appellant.

Jeffrey Hale Thomas, Little Rock, AR, argued for defendant-appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and BATTEY,* District Judge.

JOHN R. GIBSON, Circuit Judge.

R.S. Martin, Jr., appeals from a district court judgment denying his claim for money paid by Redken Laboratories to Amercable Corporation for materials Amercable furnished to H.E.R. Manufacturing, Inc. Martin claims that he had a security interest in H.E.R.'s accounts receivable, and accordingly, should have received the Redken payment. We affirm the district court's holding that Martin is not entitled to that portion of the Redken payment representing payment for materials, but reverse with respect to that portion of the payment representing the past-due amounts H.E.R. owed to Amercable.

H.E.R. manufactures wave rods known as "Inspirods" used in giving permanent hair waves. Amercable supplies the cable used in manufacturing Inspirods, and H.E.R. completes production. From the beginning of its corporate existence, H.E.R. had financial difficulties and Martin, one of its original stockholders, extended loans to H.E.R. H.E.R. executed a promissory note to Martin in the amount of $300,000, secured by all accounts receivable, inventory, and other H.E.R. property. Martin perfected his security interest by filing U.C.C.-1 documents in Jefferson County, Arkansas, and with the Arkansas Secretary of State.

In the summer of 1988, the H.E.R. shareholders had a falling out. Martin filed suit against H.E.R. on August 15, 1988, seeking judgment on the promissory note and foreclosure of his security interest. This ultimately led to judgment being entered, but not before H.E.R. filed a Chapter 11 petition, which was later dismissed.[1]

This controversy arises over a purchase order dated September 6, 1988, by Redken Laboratories for a quantity of Inspirods. H.E.R. was anxious to establish a relationship with Redken and needed approximately $19,000 worth of cable to fill the order. H.E.R. already owed Amercable $22,108.42 for cable that had been previously furnished. Amercable told H.E.R. that it would not provide any more cable unless H.E.R. paid cash for the new cable plus all past due amounts. H.E.R., Redken, and Amercable then worked out an arrangement whereby Redken paid $41,608 directly to Amercable, and Amercable supplied the cable to H.E.R. Martin claims that his lien on receivables entitled him to the Redken payment.

The district court found that Martin had a valid security interest in the accounts receivable and inventory of H.E.R. *Martin v. Amercable Corp.*, No. 89–1025, slip op. at 8 (W.D.Ark. Mar. 30, 1992). Nevertheless, the district court concluded that Martin was not entitled to the $41,608 Redken payment. Relying on *Mid–Atlantic Supply v. Three Rivers Aluminum Co.*, 790 F.2d 1121 (4th Cir.1986), the district court concluded that Martin's security interest never attached to the Redken payment and that the transaction "was in all material respects a sale of raw material by Amercable entirely on the credit of Redken." Slip op. at 10. The court ruled that under these circumstances, Martin's security interest in the accounts receivable did not attach to Redken's payment. *Id.* The court reasoned that although Martin may have had a security interest in the cable after Amercable delivered it to H.E.R., his remedy was to foreclose the lien while the cable was in H.E.R.'s possession, and that Martin had no interest in the cable after H.E.R. delivered the manufactured product to Redken. *Id.* The district court also rejected Martin's claims that Amercable interfered in his contractual relationship with H.E.R. or conspired with H.E.R. to circumvent his lien. *Id.* The court also ruled that there was no basis for imposing a constructive trust or holding that the payment constituted a fraudulent conveyance or conver-

* The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation.

1. Other facts, including H.E.R.'s attempt to repudiate Martin's security interest and allegations of a conflict of interest, are not included in our discussion, as they are not relevant to the Uniform Commercial Code's applicability.

sion of assets. *Id.* at 10–11. Martin appeals.

◼ In this diversity case, we review de novo the district court's determinations of Arkansas law, giving its decision no deference. *Salve Regina College v. Russell,* 499 U.S. 225, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

◼ Martin first argues that the district court erred in holding that Amercable was entitled to the Redken payment because Martin had a perfected security interest in the money owed by Redken to H.E.R. Martin argues that the account was created on September 6, 1988, when the Redken purchase order was first issued. For support, Martin points to the U.C.C. which defines an "account" as "any right to payment for goods sold or leased or for services rendered ... whether or not it has been earned by performance." Ark.Code Ann. § 4–9–106 (Michie 1991). Martin further argues that he is at least entitled to $22,108.42, the past-due amounts H.E.R. owed to Amercable, and says that the district court clearly erred in holding that this portion of the Redken payment was a sale of raw materials. Finally, Martin complains that if we affirm the district court's decision regarding the $41,608 Redken payment, parties will be allowed to circumvent, and thus thwart, the protections contemplated by the U.C.C.

In *Mid–Atlantic,* R.A. Lawson was a corporation hired to construct a condominium project, and Mid–Atlantic was a subcontractor hired to obtain and install customized windows. 790 F.2d at 1123. The window supplier initially refused to supply the windows to Mid–Atlantic except on a cash basis, but then agreed to supply the windows under a joint check arrangement with Lawson and Mid–Atlantic. *Id.* Lawson issued a check payable jointly to the supplier and Mid–Atlantic. *Id.* Mid–Atlantic filed for Chapter 11 bankruptcy before the check was endorsed. *Id.* at 1123–24. The supplier sued the bankruptcy trustee to obtain the check. *Id.* at 1122. A bank

claimed a prior perfected lien in Mid–Atlantic's accounts receivable. *Id.* The Fourth Circuit held in the supplier's favor, reasoning that the U.C.C. was not implicated. *Id.* at 1128. The court held that Mid–Atlantic had no interest in the check because the transaction was a sale made by the supplier to Lawson, as evidenced by the supplier's extension of credit to Lawson and Lawson's actual payment to the supplier. *Id.*

Martin contends that *Mid–Atlantic* is distinguishable on a number of grounds, including the fact that only a portion of the $41,608 payment represented a purchase of raw materials. Martin points out that in *Mid–Atlantic,* the Fourth Circuit held that although the supplier was entitled to a portion of the joint check, it was not entitled to that portion of the check proceeds which actually related to a different project. 790 F.2d at 1128–29. We are persuaded that Martin is entitled to recover that portion of the Redken check ($22,108.42) representing past due amounts that H.E.R. already owed to Amercable. This portion of the Redken payment did not represent payment for raw materials; rather, it represented payment on a debt owed by H.E.R. H.E.R.'s direction to Redken to pay this debt demonstrates H.E.R.'s "right to payment." In contrast, H.E.R. had no right to the balance of the Redken payment, as that amount represented Redken's purchase of raw materials directly from Amercable.[2] *See Mid–Atlantic,* 790 F.2d at 1128. *Mid–Atlantic* simply does not stretch as far as the district court applied it in covering these past-due amounts.

Martin also contends that Amercable's conduct with respect to the $41,608 Redken check constituted a conversion of funds and a fraudulent conveyance. Martin also says that Amercable interfered with his contractual relations, and that the court should have imposed a constructive trust on the funds transferred to Amercable. On a related note, Martin claims that the district court erred in directing judgment in favor of Amercable on Martin's claim for

---

**2.** This decision does not damage the protections of the U.C.C. because Martin's remedy under the U.C.C. was to foreclose his lien while the cable was in H.E.R.'s possession, a step he apparently did not take.

punitive damages. We have carefully considered and reject these arguments.

We reverse and remand with directions that the district court enter judgment in Martin's favor in the amount of $22,108.42.