16 F.3d 1219
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 DERDA, INC., a Michigan corporation; John Derda; Leonard
Derda; Becky McKee, Plaintiffs-Appellants,
v.
FOLEY-BELSAW COMPANY, a Minnesota corporation; Foley
Martens Company, a Minnesota corporation; Richard
J. Hentges; Walter M. Ringer, Jr.,
Defendants-Appellees.
 No. 92-2497.
 United States Court of Appeals, Sixth Circuit.
 Jan. 26, 1994.
 
 Before: KENNEDY, SILER, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff appeals the district court's grant of summary judgment in favor of defendants in this breach of contract action. We affirm.
 
 
 2
 This action arises out of an unsuccessful attempt by the principals of Derda, Inc., a Michigan Corporation ("Derda"), to sell the company to Foley-Belsaw Company ("Foley"), a Minnesota Corporation. When the sale fell through, Derda, Inc., its majority shareholder Leonard Derda, and his children, John Derda, President and minority shareholder and Becky McKee, an employee and also a minority shareholder, filed suit against Foley, Walter M. Ringer, Foley's Chairman of the Board, and Richard J. Hentges, Jr., Foley's Vice-President in charge of finance and later Foley's President. The plaintiffs' complaint alleged breach of contract, fraud and misrepresentation, negligent misrepresentation, promissory estoppel and unjust enrichment. Defendants denied liability and counterclaimed against plaintiffs alleging that Derda had misrepresented the amount of inventory and the level of sales.
 
 
 3
 Defendants filed a motion for summary judgment on all of plaintiffs' claims; on March 2, 1992, the district court granted summary judgment to defendants and dismissed the complaint, leaving defendants' counterclaim pending. On September 30, 1992, the parties executed a stipulation for entry of judgment and on October 30, 1992, the district court entered an order staying the defendants' counterclaim until plaintiffs' appeal regarding the grant of summary judgment could be heard by this Court. Plaintiffs then timely appealed the district court's grant of summary judgment.
 
 
 4
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56. A district court's grant of summary judgment is reviewed de novo. Pinney Dock & Transp. Corp. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.) cert. denied, 488 U.S. 880 (1988). A district court's determination of state law is also reviewed de novo. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).
 
 
 5
 The primary issue raised by the plaintiffs in this case is whether negotiations between Derda, Inc. and Foley for the sale of Derda to Foley rose to the level of a binding contract before Foley backed out of the deal. Otherwise, as the district court stated, the facts of this case are "not much in dispute."
 
 
 6
 The district court found the undisputed facts to be as follows. Initial discussions between the two parties regarding a possible transaction began in approximately June of 1988. On September 14, 1988, defendant Ringer, on behalf of Foley, sent to plaintiff John Derda a letter of intent to purchase Derda. The letter stated the proposed terms of the transaction. Following paragraph 9, the letter contained language that stated in pertinent part:
 
 
 7
 It is understood that the parties will enter into a definitive purchase agreement containing the full terms and conditions of the transaction and containing the usual representations and warranties and indemnification agreements as are customarily included in such an agreement. Until such a formal purchase agreement has been entered into, no party shall have any obligation to any other party with respect to the transactions contemplated by this letter.
 
 
 8
 * * *
 
 
 9
 As soon as practicably possible after executing this letter of intent, Buyer shall begin an investigation of Seller's business.... Notwithstanding anything herein to the contrary, Buyer shall be obligated to enter into a definitive purchase and sale agreement only if it is completely satisfied, in its sole discretion, with this investigation.
 
 
 10
 If all parties can agree on the above terms and conditions, we would propose a purchase agreement to be drawn up and become effective December 30, 1988.
 
 
 11
 Derda, through its attorney, responded with a letter recommending modifications to the letter of intent. The response stated that the "provisions of paragraph 9 and the remainder of the letter are satisfactory." On October 31, 1988, Ringer sent a new letter of intent which replaced the September 14 letter. The new letter of intent contained identical language to that quoted above except that the proposed effective date was changed to April 1, 1989. Again, Derda found the language to be satisfactory.
 
 
 12
 On February 7, 1989, a meeting took place between representatives of the parties. A memorandum outlining unresolved issues pertaining to the contemplated sale prepared by Derda's attorney served as an agenda for the meeting. Plaintiff contends that "all of the substantive, unresolved issues, except for the tax structure of the transaction, were agreed upon and decided by the parties."
 
 
 13
 After the February 7 meeting, Foley issued a press release regarding the general terms of the sale and placed a full page advertisement announcing the sale in a trade magazine. Leonard Derda began construction of a new building in Niles, Michigan, so that Foley could move into Derda's existing building. Foley began to order office supplies, telephone systems and waste disposal systems in the name of Foley-Derda for the office in Niles, Michigan. Foley held a conference in Niles to familiarize its sales people with the Derda equipment. Foley, in the name of Foley-Derda, entered into distributorship agreements with Derda's Italian suppliers.
 
 
 14
 Despite all of this activity, the parties still had not entered into a written agreement. Several drafts and redrafts of proposed agreements had been prepared and exchanged; however, none of the draft agreements had been signed. Hentges testified in an affidavit that the delay was due to the difficulty he encountered in obtaining Derda's financial records. When he finally received a financial statement in April, 1989, it revealed that Derda's 1988 sales were $200,000-$400,000 less than John Derda had represented they would be. In addition, the Derdas had represented that the company had $600,000-$700,000 of inventory but a list of the inventory received in April, 1989 indicated it was actually in excess of $1.1 Million. Hentges stated that much of the inventory was outdated and could not be sold in the ordinary course of business. Since Foley planned to purchase the inventory, Hentges was disturbed by these disparities.
 
 
 15
 A written purchase and sale agreement was never signed by any of the parties. The sale of Derda was never completed.
 
 
 16
 The district court, after drawing all inferences in favor of plaintiffs and relying on Michigan law,[1] found that even if the letter of intent was, as plaintiffs maintain, a binding contract, the clear language of the letter of intent contained conditions precedent to Foley's liability. The first condition was that the parties would enter into a formal written agreement before any contract liability would attach to either party, and the second was that Foley must be "completely satisfied, in its sole discretion" as to the financial condition of Derda. The district court found that plaintiffs had presented no evidence that either of these conditions had been satisfied, that Foley had demonstrated that it had complied with all of its obligations under the letter of intent and that it was not satisfied as to Derda's financial condition, that Derda had produced no evidence to demonstrate that the parties had agreed to a modification of those conditions, that any new unwritten contract which plaintiffs maintain had arisen through the lengthy negotiations was unenforceable because of the Michigan statute of frauds, and that, for all of those reasons, Foley was entitled to judgment on the breach of contract claim as a matter of law.
 
 
 17
 The district court further found, again relying on Michigan law, that the plain language of the letter of intent precluded Derda from claiming that by failing to inform Derda of Foley's "silent option" to withdraw from the contract, Foley had made either a fraudulent or negligent misrepresentation of a material fact; that the plain language of the letter of intent precluded plaintiffs' claim of promissory estoppel; and that plaintiffs had presented no evidence in support of their claim that Foley had been enriched in any way as a result of the failed negotiations, and thus plaintiffs could not claim that Foley had been unjustly enriched. The district court accordingly granted summary judgment to the defendants on all of plaintiffs' claims.
 
 
 18
 We have carefully reviewed the record in this matter, and we conclude that the district court correctly held that there remains no genuine issue of material fact in this matter. Further, we hold that the district court was correct in applying Michigan law to these facts and in holding that the defendants were entitled to judgment as a matter of law. Accordingly, for the reasons stated in the district court's opinion, we AFFIRM the judgment.
 
 
 
 [1]
 Neither party has discussed the applicable law to apply to the case. The district court stated in a footnote "the parties have not addressed the issue whether Michigan or Minnesota law applies in this case. Due to plaintiffs' reliance on Opdyke, the court assumes they would argue in favor of the application of Michigan law. However, because the ultimate result is the same applying either law, the Court need not decide this issue."