UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-1660**

_____

JASON KLEIN, individually and on behalf of all others
similarly situated,

                Plaintiff - Appellant,

      v.

VERIZON COMMUNICATIONS, INC.; VERIZON ONLINE LLC; VERIZON
ONLINE-MARYLAND LLC,

                Defendants – Appellees.

_____

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. Gerald Bruce Lee, District
Judge. (1:12-cv-00757-GBL-IDD)

_____

Argued: September 21, 2016      Decided: January 5, 2017

_____

Before KING, SHEDD, and THACKER, Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**ARGUED:** Raymond Charles Fay, FAY LAW GROUP PLLC, Washington,
D.C., for Appellant. Fred Anthony Rowley, Jr., MUNGER, TOLLES &
OLSON LLP, Los Angeles, California, for Appellees. **ON BRIEF:**
Zlatomira Simeonova, FAY LAW GROUP PLLC, Washington, D.C., for
Appellant. Sean F. Murphy, Tysons Corner, Virginia, Joshua D.
Davey, MCGUIREWOODS LLP, Charlotte, North Carolina; Hojoon
Hwang, Laura K. Lin, MUNGER, TOLLES & OLSON LLP, San Francisco,
California, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 2010, Jason Klein ("Appellant") contracted to receive internet and telephone services from Verizon Communications, Inc., Verizon Online LLC, and Verizon Maryland (collectively, "Appellees"). To activate Appellees' services, Appellant agreed to an initial terms of service agreement ("2010 Agreement"), which contained a choice of law provision dictating that Virginia law governed any contractual disputes. Appellant and Appellees subsequently entered into a second terms of service agreement in 2011 ("2011 Agreement"), which contained the same choice of law provision. Prior to entering into the 2011 Agreement, Appellant terminated the 2010 Agreement. Based on that termination, Appellees charged Appellant a $135.00 early termination fee. In 2012, Appellees sent Appellant an email notifying him of changes to the prior agreements, which, for the first time, included a provision that required the parties to arbitrate disputes ("2012 Notification").

Appellant filed a class action complaint on July 11, 2012, alleging Appellees violated Virginia law by charging the early termination fee when the 2010 Agreement was terminated. Appellees moved to compel arbitration pursuant to the 2012 Notification, or alternatively, to dismiss the action. The district court granted Appellees' motion to compel arbitration. In doing so, the district court concluded that the terms of the

3

2012 Notification control this dispute. In other words, the parties effected a valid modification to the 2010 Agreement via the 2012 Notification.

However, we take issue with the path the district court took to reach this conclusion. Specifically, it failed to abide by the choice of law provision in the 2010 Agreement and apply Virginia law to the question of whether the 2010 Agreement was, in fact, modified by the 2012 Notification. Therefore, we remand with instructions that the district court apply Virginia law, pursuant to the 2010 Agreement, to determine whether that agreement was effectively modified. If the district court determines under Virginia law that the parties assented to the 2012 Notification, then its terms -- including the arbitration and choice of law provisions -- will apply to this dispute.

I.

On October 8, 2010, Appellant ordered internet and telephone services from Appellees. To activate the account, the parties entered into the 2010 Agreement. The 2010 Agreement contained the following relevant terms: (1) Appellant and Appellees consented to the "exclusive personal jurisdiction of and venue in" a court in Fairfax County, Virginia; (2) the substantive laws of the Commonwealth of Virginia governed the agreement; and (3) Appellees could only make revisions to the

4

agreement through notices on its website or by email.  J.A. 30, 33.[1]  Specifically, the 2010 Agreement provided:

> From time to time we will make revisions to this Agreement and the policies relating to the Service.  We will provide notice of such revisions by posting revisions to the Website Announcements page or sending an email to your primary verizon.net email address, or both.  You agree to visit the Announcements page periodically to review any such revisions . . . .  [R]evisions to any other terms and conditions [other than increases in monthly price] shall be effective on the date noted in the posting and/or email we send you.

Id. at 30.  The 2010 Agreement further provided that after any revisions became effective, continued use of Appellees' services equated to "accept[ing] and agree[ing] to abide" by such revisions.  Id.

When Appellees installed the services for Appellant in 2010, they erroneously added a second order which resulted in Appellant being double billed from December 2010 to March 2011. To fix the problem, Appellees deactivated Appellant's account. Appellees then charged Appellant an early termination fee of $135.00 and sent him an email confirming the cancellation on March 10, 2011.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

5

Appellant did not have internet access for a period of time during March 2011. He ultimately created a new account with Appellees in March 2011, and the parties entered into the 2011 Agreement. The 2011 Agreement contained provisions that were essentially identical to the 2010 Agreement as to venue, choice of law, and method of modification. Neither the 2010 Agreement nor the 2011 Agreement required arbitration to resolve disputes.

On June 20, 2012, Appellees sent Appellant an email containing the 2012 Notification, which attempted to make changes to the 2011 Agreement. The email provided a link to the new terms which, most notably, included arbitration of any disputes. The 2012 Notification included the same modification clause as the 2010 and 2011 Agreements, that is, periodic revisions noticed by website postings and/or email, but changed the choice of law, venue, and method of dispute resolution provisions. The choice of law became "the Federal Arbitration Act and the substantive laws of the state of the customer's billing address[.]" Id. at 102. And, instead of providing for venue in a court in Fairfax County, Virginia, the 2012 Notification provided:

> YOU AND [APPELLEES] CONSENT TO THE EXCLUSIVE PERSONAL JURISDICTION OF AND VENUE IN AN ARBITRATION OR SMALL CLAIMS COURT LOCATED IN THE COUNTY OF THE CUSTOMER'S BILLING ADDRESS FOR ANY SUITS OR CAUSES OF ACTION CONNECTED

6

IN ANY WAY, DIRECTLY OR INDIRECTLY, TO THE
SUBJECT MATTER OF THIS AGREEMENT OR TO THE
SERVICE.

Id. at 102-03 (emphasis in original). The 2012 Notification further provided, "[T]he terms now require that you and [Appellees] resolve disputes only by arbitration or in small claims court." Id. at 84. The email also stated, "By continuing to use the services after the date of this notice, you accept and agree to abide by the revised terms." Id. Finally, the 2012 Notification included a merger clause stating, "This Agreement . . . constitutes the entire agreement between you and [Appellees] with respect to the subject matter hereto and supersedes any and all prior or contemporaneous agreements[.]" Id. at 103.

Appellant filed this class action on behalf of himself and similarly situated persons in the United States District Court for the Eastern District of Virginia. He alleged the early termination fee violated Virginia law. Per the 2012 Notification, Appellees moved to compel arbitration, or alternatively, to dismiss the action. Appellees argued Appellant had agreed to the terms of the 2012 Notification, and was therefore bound by them.

The district court granted Appellees' motion to compel arbitration. See Klein v. Verizon Commc'ns, Inc., 920 F. Supp.

7

2d 670 (E.D. Va. 2013). Although it initially held Virginia law applied, the district court ultimately concluded: (1) "Maryland law [controlled] interpretations of the email contract modification . . . because the last act necessary to create [assent to the 2012 Notification] took place in Maryland"; (2) under Maryland law, "[Appellant] sufficiently assented to the [2012 Notification]"; and (3) "the arbitration clause [contained in the 2012 Notification] retroactively applie[d] to the parties' disputes predating the clause because the broad language of the clause demonstrates intent for contract modifications to apply retroactively." Id. at 680-81.[2] The district court stayed the action pending the result of arbitration.

The parties pursued arbitration in 2014. The arbitrator agreed with the district court that Maryland law governed the dispute. The arbitrator ultimately ruled in favor of Appellees. Following arbitration, the district court entered a final judgement in favor of Appellees on June 18, 2014. Appellant timely appealed.

---

[2] The district court considered the 2012 Notification in relation to both the 2010 and 2011 Agreements even though Appellant's claim arose only from the cancellation of the 2010 Agreement.

8

II.

We review de novo the district court's choice of law determination. See Salve Regina Coll. v. Russell, 499 U.S. 225, 231-34 (1991). We also review de novo issues of contract law. See Perini/Tompkins Joint Venture v. Ace Am. Ins. Co., 738 F.3d 95, 101 (4th Cir. 2013) (citing Seabulk Offshore Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004)).

III.

A.

In its decision, the district court pointed out that the parties "do not dispute that they entered into" the 2010 and 2011 Agreements. Klein v. Verizon Commc'ns, Inc., 920 F. Supp. 2d 670, 679 (E.D. Va. 2013). The first step in any contractual legal analysis is determining what law applies -- here, either Virginia law per the choice of law provision in the 2010 and 2011 Agreements, or Maryland law per the choice of law provision in the 2012 Notification. The district court instead looked at "where the last act necessary to complete the contracts occurred, and thus, where the contract between [the] parties was formed." Id. Looking at the 2012 Notification, the district court concluded, "[Appellant's] assent to [Appellees' 2012 Notification] represented the last act necessary to complete the contract . . . . [and] took place in Maryland." Id. The district court applied Maryland law, and thus determined that

9

Appellant assented to the 2012 Notification by continued use of Appellees' services.

On appeal, Appellant contends Virginia law applies based on the choice of law provision in the 2010 and 2011 Agreements. Appellees, however, contend the district court properly applied Maryland law. The issue, according to Appellees, is "whether or not the parties validly entered into [a] 2012 contract modification that contains the arbitration provision at issue." Appellees' Br. 25. Appellees believe this dispute is governed by the law "where the last acts necessary to enter the modifications occurred," which they argue is in Maryland. Id. at 26-27 (citation omitted). Appellees, therefore, contend the district court properly determined Maryland law applies, and correctly applied that law to the issues before it.

Appellant is correct. The district court erred by failing to apply the 2010 Agreement's choice of law provision, and alternatively, by not applying Virginia law in determining whether the 2012 Notification was the "last act necessary."

B.

As an initial matter, "A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules." Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.,

10

386 F.3d 581, 599-600 (4th Cir. 2004) (citing <u>Erie R.R. Co. v.</u> <u>Tompkins</u>, 304 U.S. 64, 79 (1938); <u>Klaxon Co. v. Stentor Elec.</u> <u>Mfg. Co.</u>, 313 U.S. 487, 496 (1941)). Diversity jurisdiction exists here, and this case was originally filed in the Eastern District of Virginia. Accordingly, Virginia's choice of law rules guide the analysis.

Virginia's choice of law rules generally provide, "[T]he nature, validity and interpretation of contracts are governed by the law of the place [where the contract was] made." <u>Black v. Powers</u>, 628 S.E.2d 546, 554 (Va. Ct. App. 2006) (citations and internal quotation marks omitted) (second alteration in original); <u>see</u> <u>Dreher v. Budget Rent-A-Car Sys.,</u> <u>Inc.</u>, 634 S.E.2d 324, 327 (Va. 2006). This is the analysis the district court applied. However, choice of law contractual provisions are an exception to that general rule. The Supreme Court of Virginia has stated, "Where, however, the parties to the contract have themselves expressly declared that their contract shall be held and construed as made with reference to a certain jurisdiction, that shows by what law they intended the transaction to be governed." <u>Union Cent. Life Ins. v. Pollard</u>, 26 S.E. 421, 422 (Va. 1896); <u>see</u> <u>Settlement Funding, LLC v. Von</u> <u>Neumann-Lillie</u>, 645 S.E.2d 436, 438 (Va. 2007) (citations omitted). Phrased in a more general way, "[T]he true test for the determination of the proper law of a contract is the intent

11

of the parties and that this intent . . . will always be given effect except under exceptional circumstances[.]" Tate v. Hain, 25 S.E.2d 321, 324 (Va. 1943) (citation and internal quotation marks omitted).

The exception to the general rule applies in this case because the 2010 Agreement did include a choice of law provision. And, the parties chose Virginia law.

## C.

The district court initially concluded Virginia law, particularly its "[t]raditional contract principles," was applicable. Klein 920 F. Supp. 2d at 680. However, when it came time to determine the key issue between the parties, that is, whether the 2012 Notification was effective such that the parties were required to arbitrate their dispute, the district court went awry. Instead of applying Virginia law, the district court applied Maryland law to conclude that the 2012 Notification was effective, and thus, the arbitration term applied.

In doing so, the district court essentially relied on lex loci contractus -- in other words, the law of the place of the contract. And because Appellant assented to the 2012 Notification in Maryland, the district court applied Maryland law. The problem with the approach taken by the district court, though, is that until the 2012 Notification became binding,

12

which the parties dispute was ever the case, the parties operated pursuant to the prior choice of law provision.

Although, as noted, it is true that, pursuant to Virginia's choice of law rules, lex loci contractus serves as the default rule, here the parties specifically contracted a valid and undisputed choice of law provision in the 2010 Agreement. Virginia law clearly acknowledges that such provisions are exceptions to the default rule, and more importantly, gives them effect. The parties disputed whether the 2012 Notification was an already effective modification, or merely a proposed modification to which Appellant had not yet assented.

Therefore, the analysis as to choice of law should have, at this stage, focused on the 2010 Agreement, from which Appellant's cause of action arose.

## IV.

The district court erred by failing to fully apply Virginia law as per the parties' clear intent reflected in the contractual choice of law provision in the 2010 Agreement. Accordingly, we reverse and remand for further proceedings consistent with this opinion. On remand, we leave it to the district court to consider in the first instance the application of Virginia law to the merits of this case.

13

For the reasons discussed above, the judgment of the district court is

REVERSED AND REMANDED.