STEINER CORPORATION
RETIREMENT PLAN,
Plaintiff,

and

Steiner Corp., a Nevada corporation, and Carol S. McCormick, administrator of the Steiner Corporation Retirement Plan, Plaintiffs, Counter–Defendants, Appellants,

v.

JOHNSON & HIGGINS OF CALIFOR-NIA, a California corporation, Donald F. Reeves, and Roy J. Bertoldo, Counter-claim Defendants, Appellees.

STEINER CORP., a Nevada corporation, Carol S. McCormick, administrator of the Steiner Corporation Retirement Plan, and Steiner Corporation Retire-ment Plan, Plaintiffs, Counter–Defen-dants, Appellees,

v.

JOHNSON & HIGGINS OF CALIFOR-NIA, a California corporation, Donald F. Reeves, and Roy J. Bertoldo, Defen-dants, Counter–Claimants, Appellants.

Nos. 92–4097, 92–4106.

United States Court of Appeals,
Tenth Circuit.

July 7, 1994.

Peter W. Billings, Jr. (Jay B. Bell and John E.S. Robson, with him on the briefs), of Fabian & Clendenin, P.C., Salt Lake City, UT, for plaintiffs, appellants, cross-appellees.

Robert A. Lewis, of McCutchen, Doyle, Brown & Enersen, San Francisco, CA (John R. Reese and Robert M. Gilhuly, of McCutchen, Doyle, Brown & Enersen, San Francisco, CA and David A. Greenwood, of Van Cott, Bagley, Cornwell & McCarthy, Salt Lake City, UT, with him on the briefs), for defendants, appellees, cross-appellants.

Before TACHA, SETH, and BRIGHT[*], Circuit Judges.

SETH, Circuit Judge.

Appellant Steiner Corporation and other plaintiffs, who are not parties to this appeal, sued Appellees Johnson & Higgins of California and two of its employees, Donald F. Reeves and Roy J. Bertoldo (collectively "J & H"), for professional malpractice and breach of contract, both of which implicated ERISA and the Internal Revenue Code. The crux of Appellant's complaint was that J & H breached its actuarial duties by not properly advising Appellant regarding the redrafting of Appellant's employee retire-ment plan ("Plan"), by improperly redrafting section 11.2 of the Plan, by not providing Appellant with information that it requested, and by improperly calculating the amount of Appellant's annual contributions to the Plan. J & H counterclaimed for unpaid fees.

After a bench trial before the United States District Court for the District of Utah, the court found that J & H negligently re-drafted section 11.2 of the Plan and awarded damages. With respect to the Appellant's other claims, the court found either that J & H had not committed malpractice or that Appellant incurred no damages as a result of any misconduct by J & H. On J & H's counterclaim the court found that the fees at issue were attributable to J & H's negligence and therefore were not recoverable. Both parties appealed the district court's decision.

In its opening brief to this court, Appellant accepted as true the factual findings of the district court as paraphrased below. Appellant established the Plan in 1958 to provide retirement benefits for its employees. The Plan is governed by ERISA and qualifies as a "defined benefit plan" as that term is defined in the Internal Revenue Code ("IRC"). Under the Plan employees are entitled to receive a monthly annuity as the normal form of retirement benefit. As an alternative to the annuity, the Plan provides employees with the option to select a lump sum distribution.

Throughout the years the Plan was amended several times, but for purposes of our review we are only concerned with the versions of the Plan enacted on January 1, 1978 ("1978 Plan") and on October 30, 1985 ("1985 Plan"). At all times the Plan and other documents provided that the lump sum optional benefit was supposed to be the actuarial equivalent of the annuity. Specifically, actuarial equivalent was defined in section 1.17 of the 1978 Plan as "a benefit having the same value as the benefit which such Actuarial Equivalent replaces."

In 1958 Appellant adopted a formula for calculating the value of the lump sum benefit.

---

[*] Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Over the life of the Plan, the formula was modified such that it became a layered formula ("Layered Formula"); consequently, calculating a single lump sum payment for a retiree required adding together three separately calculated amounts. Each of these amounts was based upon select actuarial assumptions as applied to an individual's duration of employment with Appellant. For service prior to January 1, 1972, a 3.5% interest rate and a 1951 group mortality table were the actuarial assumptions. For service between January 1, 1972 and December 31, 1977, a 4% interest rate and a 1951 group mortality table were used. For service after January 1, 1978, a 6% interest rate and a 1971 group mortality table were the assumptions. These actuarial assumptions that comprised the Layered Formula were not specified in the Plan, but rather they were written as a separate document. If a fluctuating market interest rate, which is an accurate measure of the effect of inflation on the dollar, were used to calculate the lump sum, the lump sum would have been the real dollar equivalent to a monthly annuity paid over the life of a retiree. However, because the Layered Formula utilized fixed rates, the lump sum was more valuable than the annuity.

In 1977 J & H was hired to replace William M. Mercer, Inc. as the actuary for the Plan. J & H continued to provide actuarial services until 1988 when it was fired by Appellant. As a part of its services, J & H prepared annual actuarial statements that valued the Plan and provided a range of permissible annual contributions that were to be made by Appellant. Although almost all retirees historically opted for the lump sum, J & H evaluated the Plan based on the value of annuities rather than the more valuable lump sum. As a consequence, the Plan valuations substantially understated the value of the benefits and costs that Appellant had incurred.

For most of the time period relevant to this action, F.J. Kane was Appellant's Chief Financial Officer, and Daniel Harris was the Plan Administrator. Collectively, Mr. Kane and Mr. Harris were responsible for the entire operation and maintenance of the Plan, with J & H providing support services such as those mentioned above. Mr. Kane retired in 1984. It is undisputed that Mr. Kane knew that the Layered Formula provided a lump sum that was more valuable than the annuity despite the express language in the Plan that they were to be comparable.

On July 1, 1984, Kevin Steiner replaced Mr. Kane as Chief Financial Officer. The record reflects that unlike Mr. Kane, Mr. Steiner did not know that the lump sum was more valuable than the annuity. Also, there is no evidence that Mr. Harris informed Mr. Steiner of the disparity between the alternative benefits. Sometime in 1984 the decision was made to amend the Plan because of the enactment of the Retirement Equity Act and other applicable federal laws and regulations. The most important requirement imposed by these enactments was that by October 31, 1985 a qualified plan must specify all of the factors used to calculate the actuarial equivalence of optional benefits so that the calculations would be non-discretionary and known to a plan's participants.

Sometime in February 1985, Mr. Steiner met with representatives of J & H to discuss amending the Plan. Although J & H disputes the following, the record supports the court's finding that Mr. Steiner requested that J & H provide a valuation of the Plan assuming that all retirees opted for the lump sum as opposed to J & H's traditional method of valuating based on the annuity. Although Mr. Steiner made several more requests for this information, J & H did not provide the calculations until after the October 31, 1985 deadline for Appellant to submit its amended Plan for approval. Rather than make the requested calculations or inform Appellant that it could potentially change its Layered Formula when it amended the Plan, J & H submitted a proposed amended Plan for Mr. Steiner's approval that merely incorporated the preexisting Layered Formula. There were several other modifications made to the Plan that will be discussed later in this opinion. Without reading the proposed amended Plan or any of the previous plans, Mr. Steiner executed the proposed Plan on October 30, 1985.

Early in 1986, J & H finally provided the calculations requested by Mr. Steiner almost a year previously. Based on the calculations, Appellant amended the 1985 Plan in July 1986 so that the lump sum was in fact the actuarial equivalent of the annuity. However, because this amendment was made after October 31, 1985, it applied only to the prospective calculation of benefits accrued after July 1986. Mr. Steiner testified at trial that if J & H had submitted the requested calculations before October 31, then Appellant would have adopted a new formula for calculating the lump sum that would have retroactively affected retirees' benefits such that the lump sum would have been equal to the annuity benefit for anyone retiring after October 31.

Unrelated to the facts surrounding the Layered Formula, the court found that Appellant sold the stock of a subsidiary named Steiner Financial Corporation ("SFC") in 1987. As a result SFC's fourteen employees were transferred and later terminated. Of these fourteen employees, only one was fully vested under the Plan while the other thirteen were not. As a matter of percentages, the SFC employees constituted only 1.6 percent of all Steiner employees, and the thirteen non-vested SFC employees comprised 2.6 percent of Steiner's total non-vested employees.

When J & H revised the Plan in 1985, it rewrote section 17.3 of the 1978 Plan. As originally drafted, section 17.3 provided:

"In the event of permanent discontinuance of contributions or termination (whole or partial) of the Plan, all Participants for whom the Plan is being discontinued or terminated shall· be fully vested with respect to benefits to which they would have been entitled had they terminated employment with a fully vested interest as of the date of such discontinuance or termination."

When it drafted the 1985 Plan, J & H replaced section 17.3 with section 11.2 which provided:

"As to any Employer for which there is a complete discontinuance of contributions, or for which the Plan is terminated or partially terminated, ... the Participants in its employ ... [shall be fully vested]."

The court found that Appellant did not want the Plan amended to provide greater rights than required by ERISA. Furthermore, the court found that Appellant incurred $119,000.00 in costs as a result of vesting the previously non-vested thirteen SFC employees when it discontinued making contributions to the Plan. The implication of this holding is that the vesting requirements of section 11.2 exceeded ERISA's mandate and therefore J & H's amendment to the Plan unjustly caused Appellant to vest its former employees.

Based on the facts as summarized above, the district court held:

1. J & H negligently failed to inform Appellant that it may have been possible to change the Layered Formula when Appellant adopted the 1985 Plan, and negligently failed to provide comparative calculations requested by Mr. Steiner in a timely manner.

2. The Layered Formula previously used by Appellant became a part of the Plan by administrative practice, usage and common consent; therefore, the lump sum actuarial equivalence factors could not be altered to reduce accrued benefits. 26 U.S.C. § 411(d)(6); 29 U.S.C. § 1054(g).

3. Appellant suffered no damages as a result of allegedly making insufficient contributions to the Plan because J & H failed to value the lump sum rather than the annuity, and because payment of additional contributions by Appellant was wholly speculative.

4. J & H negligently redrafted section 11.2 of the 1985 Plan, and Appellant was not contributorily negligent in this regard. Such negligence caused financial injury to Appellant in the amount of $119,000.00, plus interest.

5. J & H's counterclaim for unpaid fees is dismissed because the fees related solely to J & H's negligent conduct.

On appeal, the parties challenge every legal conclusion of the court. Appellant argues (1) that the Layered Formula could have been altered at the time the Plan was amended in 1985, and (2) that the court erred by concluding that it was wholly speculative

whether Appellant would have made additional contributions to the Plan if J & H had correctly valued the lump sum in its annual actuarial statements. In its cross-appeal, J & H claims (1) that it did not improperly amend the 1985 Plan to require vesting of SFC employees, and (2) that there is no evidence supporting the court's decision that J & H's counterclaim for fees related exclusively to its own negligence. There are miscellaneous claims that will be expressly dealt with throughout this opinion.

It is well settled that we review the district court's findings of fact under the clearly erroneous test. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190. (1991). By the same token, we review the court's conclusions of law *de novo. Estate of Holl v. Commissioner,* 967 F.2d 1437 (10th Cir.1992).

### *LUMP SUM ACTUARIAL FACTORS: LAYERED FORMULA*

As we related in the recitation of the facts, the actuarial factors historically used by Appellant to calculate the lump sum optional benefit were included in a document that was separate and distinct from the Plan document. This is precisely why Appellant had to amend its Plan by October 31, 1985. *See* Rev. Rul. 79–90, 1979–1 C.B. 155; Rev. Rul. 81–12, 1981–1 C.B. 228. The issue we are concerned with is whether Appellant could have changed the actuarial assumptions at the time of amendment in October 1985 to retroactively reduce the lump sum benefit. If so, J & H was under a professional duty to provide Appellant with the necessary information and calculations to permit it to amend the Layered Formula. Although the parties have made numerous and often overly complex arguments relative to this question, we discern that the key lies in the express language of ERISA, the IRC, and related regulations at the time the Plan was amended.

By way of preface, we are assuming for purposes of this appeal that the Layered Formula was in fact a part of Appellant's Plan. Despite J & H's argument to the contrary, the applicable statutes, regulations, and revenue rulings clearly state that only amendments to a plan that adversely affect accrued benefits are to be restrained. While the parties make numerous arguments concerning the accuracy of such an assumption, we do so because our decision does not depend on whether or not there was a "plan amendment."

In 1985, 29 U.S.C. § 1054(g) provided:

"(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) of this title.

"(2) For purposes of paragraph (1), a plan amendment which has the effect of—

"(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or

"(B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits...."

Internal Revenue Code § 411(d)(6) was essentially for all practical purposes the same as the above quoted ERISA section; thus, for ease of reference we will cite only to 29 U.S.C. § 1054(g). Both sections have been amended over time but with no significant changes.

It is without a doubt that the lump sum is not an accrued benefit as that term is defined in 29 U.S.C. § 1002(23) (accrued benefits are "expressed in the form of an *annual* benefit commencing at normal retirement age...."). (Emphasis Added.) Nor is there any argument that we are dealing with an early retirement benefit. Therefore, our inquiry is whether the lump sum is either a retirement subsidy or an optional form of benefit such that it may be subject to § 1054(g)(2).

We recently ruled that a lump sum benefit is an optional form of benefit for purposes of § 1054(g)(2). *Counts v. Kissack Water & Oil Service, Inc.,* 986 F.2d 1322, 1324 (10th Cir.1993). We see no reason to depart from our conclusion in *Counts* by reason of the facts presented herein. *See also Ross v. Pension Plan for Hourly Employees of SKF Indus., Inc.,* 847 F.2d 329,

333 (6th Cir.1988) (optional form of benefit usually involves choice of employee as to how benefit is received); *Davis v. Burlington Indus., Inc.,* 796 F.Supp. 866 (E.D.N.C.1991). Because § 1054(g)(2) distinguishes between optional forms and retirement-type subsidies, we find that generally a benefit is either one or the other, but not both.

■ Even if a lump sum optional form of benefit could also be a subsidy, such is not the case here. Appellees correctly point out that the Secretary has not yet defined retirement-type subsidy as provided for in the statute. Nevertheless, J & H contends that the lump sum is a subsidy because its value exceeded the annuity's. *See Bencivenga v. Western Pennsylvania Teamsters,* 763 F.2d 574 (3d Cir.1985); *Costantino v. TRW, Inc.,* 773 F.Supp. 34 (N.D. Ohio 1991). After carefully reviewing these cases, we are not persuaded that they support J & H's position. Furthermore, J & H's contention is contrary to the legislative history, cited in its brief, that defines subsidy as a benefit "continu[ing]" after retirement." S.Rep. No. 575, 98th Cong., 2d Sess. 30, *reprinted in* 1984 U.S.C.C.A.N. 2547, 2576. The lump sum benefit at issue is paid out in full at the time of retirement and does not continue thereafter like a subsidy. We therefore conclude that the lump sum optional benefit is not a retirement-type subsidy. *See Costantino v. TRW, Inc.,* 13 F.3d 969 (6th Cir.1994) (subsidy is a type of benefit specified in the plan as monthly annuities available to early retirees which exceed the annuities for those who retire at a normal retirement age because an early retiree's benefits last longer).

According to the explicit language of § 1054(g)(2), since the lump sum is an optional form of benefit, Appellant may be said to impermissibly reduce accrued benefits only if it were to *eliminate* the lump sum. However, the record is clear that if Mr. Steiner, who was responsible for the administration of the Plan at the critical time in question, October 31, 1985, had known that the lump sum was more valuable than the annuity, then he would have opted to change the actuarial factors to *reduce* the lump sum so that it was equivalent to the annuity. Furthermore, there is no argument by either

party nor any evidence suggesting that Appellant ever intended to eliminate the lump sum benefit. Neither ERISA nor the IRC equates the reduction of an optional benefit with a reduction in accrued benefits, and it is only the reduction of accrued benefits that is not permitted by the statutes.

J & H attempts to depart from the express language of the statutes by looking to Treasury Regulation § 1.411(d)–4, *codified at* 26 C.F.R. § 1.411(d)–4. The gist of Appellees' argument is that "eliminating an optional form of benefit" is interpreted under § 1.411(d)–4 as including "reducing" an optional benefit. Even if such an interpretation were accurate, § 1.411(d)–4 A–9(a) provides that "the provisions of this section are effective January 30, 1986." Consequently, § 1.411(d)–4 has no bearing on this dispute because all of the pertinent activities occurred prior to October 31, 1985.

Appellees also rely on Treasury Regulation § 1.411(d)–3(b), *codified at* 26 C.F.R. § 1.411(d)–3(b), which provides:

"(b) Prohibition against accrued benefit decrease. Under section 411(d)(6) a plan is not a qualified plan ... if a plan amendment decreases the accrued benefit of any plan participant.... For purposes of determining whether or not any participant's accrued benefit is decreased, all the provisions of a plan affecting directly or indirectly the computation of accrued benefits which are amended with the same adoption and effective dates shall be treated as one plan amendment. Plan provisions indirectly affecting accrued benefits include, for example, provisions relating to years of service and breaks in service for determining benefit accrual, and to actuarial factors for determining optional or early retirement benefits."

This regulation only prohibits the decrease in accrued benefits, which we have already held do not include lump sum payments. The regulation does not say that a change in actuarial factors that reduces optional benefits is prohibited, and we cannot infer such a meaning. Rather, it is more appropriate to read this regulation as conforming to the express language of the statute to which it relates. Again, as we have previously deter-

mined, only an elimination of the lump sum suffices to reduce accrued benefits for purposes of the statute. Thus, under the regulation only a change to the actuarial factors that effectively eliminates an optional benefit will effectuate an impermissible reduction of accrued benefits.

Based on the foregoing, we must conclude that the district court erred when it held that the Layered Formula could not be amended to reduce the lump sum optional benefit at the time Appellant adopted the 1985 Plan. In light of the record and our holding, we further hold that J & H had a duty to provide the lump sum calculations requested by Mr. Steiner and to inform Appellant that it could change the Layered Formula to make the lump sum equivalent to the annuity, and that J & H breached its duty by failing to provide this information by October 31, 1985. However, there still remain the issues of causation and damages; therefore, we REMAND to the district court for further proceedings on these issues. In addition, the merit of Appellees' defenses of laches and contributory negligence must also be decided on remand because the district court's opinion is silent as to these issues and they involve factual determinations that we are unwilling or unable to make.

### CONTRIBUTIONS TO PLAN

The district court held that if J & H had annually calculated the value of accrued benefits based on the lump sum, Appellant would have needed to make substantially larger contributions to the Plan. Appellant argues that the court erred by finding that it was "wholly speculative" whether Appellant would have made such contributions because ERISA required plans to be adequately funded and because Appellant was capable of making the additional contributions. Unfortunately for Appellant, merely because the law requires a certain level of funding and Appellant could have attained that level, does not prove that Appellant would have in fact made the additional contributions. A thorough review of the record does not support the conclusion that the district court's factual findings were clearly erroneous. The trial court's decision of this claim is AFFIRMED.

### VESTING

As we recited in the facts, section 11.2 of the 1985 Plan required Appellant to vest employees if for any employer, including a subsidiary like SFC, "there is a complete discontinuance of contributions, or ... the Plan is terminated or partially terminated." The district court agreed with Appellant that there had been a discontinuance of contributions to SFC in 1987, ostensibly when SFC was sold, and therefore Appellant was required to vest the previously non-vested thirteen SFC employees. The court also concluded that this vesting requirement was based on the language "as to any Employer" which did not appear in the 1978 Plan and was negligently inserted by J & H.

After carefully reviewing the record, we agree with the court that the phrase, "as to any Employer," was not present in the 1978 Plan and potentially increased Appellant's liability beyond the mandate of ERISA, 26 U.S.C. § 411(d)(3). However, we find that the district court clearly erred when it found that the above quoted language caused Appellant to vest the SFC employees.

As a condition to vesting, section 11.2 required either a complete discontinuation of contributions to an employer or the total or partial termination of the Plan. We first look at the termination issue. Appellant would have us look only at SFC when determining whether or not there was a termination of the Plan. However, this argument is disingenuous in light of Appellant's earlier claim that a termination of a plan must be decided by looking to the plan in its entirety. We hold this to be the better argument, particularly since 26 U.S.C. § 411(d)(3) clearly relates to the effect of a total or partial termination of an entire plan, not the total or partial termination of a portion of a plan. Because Appellant concedes that there is no total or partial termination of the entire Plan, *see Weil v. Retirement Plan Admin. Comm.*, 913 F.2d 1045, 1051–52 (2d Cir.1990) ("significant percentage" of total number of employees must be fired to constitute partial termination of a plan), we must decide whether Appellant carried its burden of establishing

that there was a complete discontinuance of contributions for SFC.

Initially, Appellees correctly discern that one of the SFC employees was vested at the time that SFC was sold; therefore, it is argued that there could not be a total discontinuance of contributions because Appellant was required to and in fact did make contributions for this employee. Even though this contention is persuasive, we find that the problem facing Appellant is its utter failure to illicit facts at trial that could support the district court's finding that Appellant had discontinued making contributions. Appellant points us to various passages in the trial transcript to bolster its assertion that the district court was correct, but the cited testimony only states that Mr. Steiner understood that section 11.2 required vesting if there had been a discontinuation and that he "thought that 11.2 required me to vest the employees." Aplt. Supp.App. at 62. This is not evidence that there was in fact a discontinuation of contributions, but merely is a statement as to Mr. Steiner's state of mind. At best the evidence suggests that Mr. Steiner vested the employees for unexplained reasons. We note that Appellant included in its supplemental appendix to this court a document purporting to show that there was indeed a discontinuation in 1987; however, it is beyond this court to entertain evidence that was not presented to the district court. Without this piece of evidence before the lower court, there were simply no facts alleged that could have supported the district court's finding of discontinuation. Consequently, the district court's holding that J & H owes Appellant $119,000.00, plus interest, based on the vesting of the SFC employees must be REVERSED.

## UNPAID FEES

The parties make several arguments relative to the court's denial of J & H's counterclaim for unpaid fees because the fees related exclusively to J & H's negligence. Although we understand the holding of the district court, the court's opinion does not illuminate the factual findings supporting its legal conclusions. We therefore VACATE the court's

holding as to this claim and REMAND for clarification.

Accordingly, the decision of the district court is AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED for proceedings consistent with this opinion.