**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 18 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STEINER CORPORATION, a Nevada
corporation,

     Plaintiff-Counter-Defendant-
     Appellant,

CAROL S. MCCORMICK,
Administrator of the Steiner
Corporation Retirement Plan; and
STEINER CORPORATION
RETIREMENT PLAN,

     Plaintiffs-Counter-Defendants,

v.

JOHNSON & HIGGINS OF
CALIFORNIA, a California
corporation; DONALD F. REEVES;
and ROY J. BERTOLDO,

     Defendants-Counter-Claimant-
     Appellees.

No. 00-4178
(D.C. No. 88-CV-410-G)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, Circuit Judge, **MCWILLIAMS**, Senior Circuit Judge, and
**MCKAY**, Circuit Judge.

---

    [*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

For many years, appellant Steiner Corporation offered its employees a retirement plan with two options: an annuity or a lump sum payment. Because Steiner calculated the lump sum benefit using below-market fixed interest rates, there is evidence that the lump sum was significantly more valuable to retiring employees than the annuity. Appellees Johnson & Higgins of California, Donald F. Reeves, and Roy J. Bertoldo (collectively, "J&H") served as actuary for Steiner's retirement plan. In the course of providing these services, J&H failed to comply in a timely manner with Steiner's request for information regarding the disparity in value between the lump sum and annuity benefits. Steiner claims that this failure deprived it of the opportunity to adjust the formula by which the lump sum benefit was calculated, thereby causing it to lose millions of dollars in benefits paid to retiring employees. The district court ruled that Steiner had failed to establish causation and accordingly entered judgment for J&H.

**DISCUSSION**

Steiner's attempt to gain de novo review of the district court's causation ruling is not convincing. Steiner contends that, in finding that Board approval was required before the lump sum benefit could be reduced, the district court ignored the relevant provision of the Plan, as well as the legal distinction between amending a plan and the exercise of a discretionary function under a plan. Steiner

seeks de novo review by framing this issue as a legal question. In reality, the inquiry turns on the district court's factual findings. As such, the clearly erroneous standard applies. See Fed R. Civ. P. 52(a); Salve Regina College v. Russell, 499 U.S. 225, 233 (1991).

Belying its contention that the district court's ruling raises strictly a question of law, Steiner first seeks to discount the evidence on which the court based its holding. The district court cited to 1978 Board minutes reflecting the Board's approval of Plan amendments impacting Plan benefits. Steiner points out that the minutes were silent as to lump sum benefits, and that the Plan continued to provide only that the lump sum "shall be the Actuarial Equivalent" of the annuity. "Actuarial equivalent," in turn, was defined by the Plan as having the "same value" as the benefit it replaces, and was to "be determined by an Actuary appointed by the Company and such determination shall be conclusive." According to Steiner, this language clearly signifies that J&H (the Actuary), not the Board, had the authority to change the formula prior to the October 31, 1985 amendments.

We agree that the Board minutes relied on by the district court do not necessarily support its conclusion that only the Board could have changed the lump sum formula before the October 31, 1985 amendments. The Board minutes reflect only the Board's discussion and approval of certain amendments to

Steiner's pension plan. There is no mention of the lump sum benefit in the Board's discussion. As Steiner points out, the Plan continued to give J&H the authority to determine the formula by which the "actuarial equivalent" of any benefit was calculated.

However, the Board minutes are not the only piece of evidence cited by the district court. The court also cited the trial testimony of Steiner's President and CEO, Richard Steiner, who testified that the level of benefits paid out by the Plan was determined by the Board. Obviously, changing the lump sum formula would have changed the level of benefits paid out under the Plan. Further, J&H offers other evidence not expressly relied on by the court, including the deposition testimony of Steiner Plan Administrator Daniel Harris, who stated that Plan changes required Board approval.

On reply, Steiner offers the testimony of two witnesses for the notion that Steiner CFO Fred Kane had, in the past, unilaterally made changes to the lump sum formula without Board approval. The first is Harris, who testified that Kane decided what discount rate to use in computing the lump sum. The second is J&H employee Roy Bertoldo, who testified at trial that he understood Kane to be making corporate decisions regarding the lump sum formula. The fact that Kane was the true decision-maker in this area does not mean the Board had no role, however, and neither witness states whether the Board subsequently ratified

- 4 -

Kane's decisions. Further, how the Board operated in the past under Kane does not establish how it operated in 1985.

Steiner then attempts to carve out a distinction between changes to the annuity benefit – which it concedes required Board approval – and changes to the lump sum benefit – which it contends did not require Board approval until the formula was made part of the Plan via the October 31, 1985 amendments. Steiner's position is not without merit. However, the factual record is not clear enough to render the district court's findings clearly erroneous. Regardless of whether J&H, as the actuary, had authority under the Plan to determine the "actuarial equivalent" of benefits, the district court reasonably found, as a factual matter, that Steiner required its Board to approve changes to Plan benefits, including the lump sum benefit. The witnesses did not directly address the lump sum-annuity distinction now urged by Steiner. Under these circumstances, it was not clearly erroneous for the court to find as it did based on the evidence.

Steiner assumes that the district court's ruling was based on an erroneous interpretation of law. Steiner cites case law for the proposition that a lump sum formula can be changed without a plan amendment. However, the district court did not rule that the Board was legally required to approve any change to the formula, but rather that the Board was required to do so as a matter of Steiner

company practice. In this regard, Steiner's legal argument does not overcome the district court's factual findings.

Steiner argues that, even if Board approval was required, the district court was clearly erroneous in finding that the Board would not have implemented a retroactive reduction in the lump sum benefit in 1985. The court based its finding on the Board's subsequent decisions declining to take aggressive actions to remedy the disparity between the lump sum and annuity benefits. Steiner frames the court's ruling as having held that "Steiner's board would have gone against the wishes of Richard and Kevin Steiner." However, there is no clear evidence that such a request for a change would actually have been made. Kevin himself testified that he would have "tried to find out what [his] options were," though he "believe[s]" that he would have urged the retroactive change.

In any event, even assuming that Kevin would have wanted to make the retroactive change if he had been given J&H's calculations before the October 1985 deadline, that does not necessarily mean that the Board would have complied with his wish. Steiner contends otherwise with the conclusory assertion that "Richard and Kevin Steiner controlled the company." However, the Board later rejected Kevin Steiner's suggestion to eliminate, not just reduce, the lump sum benefit going forward.

Also significant is the Board's June 1986 rejection of a proposal to freeze the accrual of lump sum benefits. The Board was concerned that a freeze would disappoint employee expectations and cause morale problems. Steiner's own expert witness testified that a retroactive reduction in the lump sum benefit would have done more harm to employee morale than the proposed freeze. Further, the personal finances of key decision-makers at Steiner, including Board members, would have been affected negatively by any freeze or retroactive reduction.

Steiner offers several other reasons why the Board would have approved the retroactive change, but none are persuasive. First, according to Steiner, "there is absolutely no evidence in the record that the board ever went against the wishes of Richard Steiner." Given that Steiner has the burden of proof, this argument is not helpful. It is not a foregone conclusion that Richard Steiner would have supported the retroactive reduction in 1985, especially given that he did not support the freeze proposed the following year.

Second, Steiner contends that changing the formula to make the lump sum equal to the annuity would have been consistent with previous decisions by the Board regarding Plan benefits. It is speculative to predict that the Board would have taken a particular action based on previous decisions that do not bear directly on the action in question. The weakness of the inference is magnified by the countervailing financial interests at play for Board members.

Third, Steiner argues that the same factors favoring a retroactive reduction in 1986 existed in 1985, and the fact that Steiner wanted to make the change in 1986 shows that it would have made the change in 1985. The evidence, however, does not show that the Board necessarily wanted to make the retroactive reduction in 1986, only that Richard and Kevin Steiner wanted to make the change. As discussed above, their wishes cannot necessarily be equated with Board action. The district court found that "Steiner" – presumably meaning Steiner Corporation – wanted to make the change in early 1986, but there is no indication that the court intended to refer to the Board, rather than to Steiner's management.

There is no causal link between J&H's negligent failure to provide the requested calculations to Steiner and injury to Steiner resulting from the lost opportunity to reduce the value of the lump sum benefit by changing the formula. The link is broken given two findings of the district court, both of which are reasonable in light of the record: 1) Board approval was required to alter the formula before the October 1985 deadline; and 2) the Board would not have approved a retroactive change to the formula in October 1985. We cannot conclude that these findings were clearly erroneous, and these two findings warrant affirmance of the district court's holding that Steiner failed to establish causation.

**CONCLUSION**

Because Steiner failed to prove that its injury was caused by J&H's negligence, the district court's judgment is AFFIRMED. Steiner's Motion to Allow Supplemental Appendix is GRANTED.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge