FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 25, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

GARRISON PROPERTY AND
CASUALTY INSURANCE COMPANY;
USAA CASUALTY INSURANCE
COMPANY,

      Plaintiffs Counterclaim Defendants -
      Appellees,

v.

NICHOLAS S. HORTON; TAISHARA
ABEYTA,

      Defendants Counterclaim Plaintiffs -
      Appellants,

Nos. 25-1113 & 25-1122
(D.C. No. 1:22-CV-03187-NYW-CYC)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **HOLMES**, Chief Judge, **MATHESON**, Circuit Judge, and **HEIL**,[**] Chief
District Judge.

_____

Appellees USAA Property & Casualty Insurance Company ("USAA") and

Garrison Property & Casualty Insurance Company ("Garrison") (together, "Appellees")

_____

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable John F. Heil, Chief District Judge, United States District Court,
Northern District of Oklahoma, sitting by designation.

brought a declaratory judgment action to determine the rights and obligations under their respective insurance contracts as it relates to coverage for a motorcycle accident. The motorcycle was not listed on either policy's declarations page. While Appellees argued that the policies clearly excluded coverage under Exclusion B.1, Appellants Nicholas Horton and Taishara Abeyta (together, "Appellants") argued that exceptions to Exclusions B.2 and B.3 conflicted with Exclusion B.1, thereby creating an ambiguity that must be resolved in favor of coverage under controlling Colorado law. Appellants also asserted bad faith counterclaims against Appellees. In ruling on cross-motions for summary judgment, the district court found in favor of Appellees, holding that coverage was plainly excluded under the policies and, therefore, Appellants' counterclaims must also fail. Appellants now appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     BACKGROUND

On March 13, 2018, Appellant Nicholas Horton ("Appellant Horton") was operating a motorcycle with Appellant Taishara Abeyta ("Appellant Abeyta") as his passenger when he was involved in a collision that severely injured them both. Aplt. App. Vol. 1 at 166. The motorcycle Appellant Horton was operating was owned by his father, Daniel Horton, and was insured through a Progressive Casualty Insurance Company ("Progressive") policy owned by Daniel Horton. *Id*. At the time of the collision, Daniel Horton also owned an automobile insurance policy through USAA and Appellant Horton owned an automobile insurance policy through Garrison. Aplt. App. Vol. 3 at 381, 428. Neither the USAA policy nor the Garrison policy included the motorcycle on the declarations page.

2

In 2019, Appellant Abeyta brought a state court personal injury lawsuit against a third-party traffic control company. Aplt. App. Vol. 1 at 127-132. Shortly thereafter, Appellant Abeyta's counsel sent a letter to USAA offering to release its insured from any claims in exchange for payment of the policy limits. Aplt. App. Vo. 6 at 907. USAA responded, stating that the policies did not afford coverage, specifically making reference to Exclusion B.2. Aplt. App. Vol. 6 at 908. In 2020, Appellant Abeyta again offered to settle with USAA, this time for half the policy limits. Aplt. App. Vol. 6 at 918-21. USAA again rejected the offer. Aplt. App. Vol. 6 at 922. Later that year, Appellant Abeyta settled with the third-party traffic control company for an undisclosed amount and amended her lawsuit to include Appellant Horton as a defendant. Aplt. App. Vol. 2 at 313-14; Aplt. App. Vol. 2 at 299-302. While USAA refused to provide a defense to Appellant Horton under a theory of no coverage, Garrison provided a defense under a reservation of rights. Aplt. App. Vol. 2 at 325-26.

In 2021, Garrison offered to settle with Appellant Abeyta for $100,000. Aplt. App. Vol. 6 at 935. Appellant Abeyta refused. Aplt. App. Vol. 6 at 937-38. The case then proceeded to jury trial resulting in a $42 million verdict in Appellant Abeyta's favor, with the jury finding Appellant Horton responsible for 5% of her damages. Aplt. App. Vol. 1 at 143-145. Judgment was entered against Appellant Horton for just over $3 million, well in excess of all policy limits. Aplt. App. Vol. 2 at 312.

In 2022, Garrison filed a declaratory action against Appellant Horton, Appellant Abeyta, and Daniel Horton to determine the rights and obligations under the policy. Aplt. App. Vol. 1 at 31. The complaint was later amended to add USAA as a plaintiff. Aplt.

App. Vol. 1 at 154-163. Both Garrison and USAA sought declaratory judgment that the motorcycle was not covered under either policy. *Id*. Appellant Horton asserted counterclaims for breach of contract and bad faith. After Appellant Horton assigned his common law bad faith claim to Appellant Abeyta, she also filed a counterclaim against Garrison and USAA for bad faith. The parties filed cross motions for summary judgment. Aplt. App. Vol 6 at 871-892; Vol. 10 at 1223-1245. In 2025, the district court granted summary judgment in favor of Garrison and USAA finding no coverage under either policy. Aplt. App. Vol. 13 at 1866-1903. Because there was no coverage, the district court found that the statutory and common law bad faith claims also failed. *Id*. Both Appellant Horton and Appellant Abeyta filed appeals, which were consolidated for oral argument.

## II.    DISCUSSION

We review the district court's decision on cross motions for summary judgment de novo, applying the same standard as the district court and viewing all inferences in the light most favorable to the non-moving party. *Allen v. Sybase, Inc*., 468 F.3d 642, 649 (10th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a case in which jurisdiction is founded on diversity, we apply the law of the forum state. *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995) (citing *Broderick Inv. Co. v. Hartford Accident & Indem. Co.,* 954 F.2d 601, 606 (10th Cir.), *cert.*

4

*denied,* 506 U.S. 865, 113 S.Ct. 189, 121 L.Ed.2d 133 (1992)). We review the district court's interpretation of state law de novo. *Id.* (citing *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *Kirchner v. Chattanooga Choo Choo,* 10 F.3d 737, 738 (10th Cir. 1993)).

A court interprets an insurance contract using traditional principles of contract interpretation. *See Buell v. Security Gen. Life Ins. Co.*, 987 F.2d 1467, 1469 (10th Cir.) (citing Colorado law), *cert. denied*, 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993); *Wota v. Blue Cross and Blue Shield*, 831 P.2d 1307, 1309 (Colo. 1992). "Unambiguous provisions of an insurance contract must be construed to give effect to their plain meaning." *Am. Fam. Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo. 1991). When a provision in the insurance contract is ambiguous, however, "it must be construed against the drafter and in favor of providing coverage to the insured." *Chacon v. Am. Fam. Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990); *see also United Bank of Pueblo v. Hartford Accident & Indem. Co.*, 529 F.2d 490, 494 (10th Cir. 1976) (applying Colorado law). A policy is ambiguous "when it is reasonably susceptible to more than one meaning." *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1359 (Colo. 1993). But courts should not labor to create ambiguities; if the contract is clear, "a court should not rewrite it to arrive at a strained construction." *Republic Ins. Co. v. Jernigan*, 753 P.2d 229, 232 (Colo. 1988); *see also Parrish Chiropractic Ctrs. v. Progressive Casualty Ins. Co.*, 874 P.2d 1049, 1055 (Colo. 1994).

## A. *Insurance Coverage*

5

The district court found that coverage for the motorcycle was negated by an exclusion in the policies. The applicable exclusion—Exclusion B.1—states:

> B.    We do not provide Liability Coverage for the ownership, maintenance, or use of:
>
>>    1.    Any vehicle that is not your covered auto unless that vehicle is:
>>
>>>        a.    A four- or six-wheel land motor vehicle designed for use on public roads;
>>>
>>>        b.    A moving van for personal use;
>>>
>>>        c.    A miscellaneous vehicle; or
>>>
>>>        d.    A vehicle used in the business of farming or ranching.

Aplt. App. Vol. 3 at 405, 445. The policies define "your covered auto" to mean "[a]ny vehicle shown on the Declarations." *Id*. at 401-02, 441-42. It is undisputed by the parties that the motorcycle is not listed on the declarations for either policy. It is also undisputed that the motorcycle does not fall within any of the exceptions listed under Exclusion B.1. Appellants argue that the district court erred, however, in failing to find that the exceptions to Exclusions B.2 and B.3 conflict with Exclusion B.1, creating an ambiguity in the policies which must be resolved in favor of coverage. This is the sole question on appeal as it relates to the issue of insurance coverage.

Exclusions B.2 and B.3 state:

> B.    We do not provide Liability Coverage for the ownership, maintenance, or use of:
>
>>        . . .

6

2.  Any vehicle, other than your covered auto, that is owned by you, or furnished or available for your regular use. This exclusion (B.2) does not apply to a vehicle not owned by you if the vehicle's owner has a valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

3.  Any vehicle, other than your covered auto, that is owned by or furnished or available for the regular use of, any family member. This exclusion (B.3) does not apply:

    a.  To your maintenance or use of such vehicle; or

    b.  To a vehicle not owned by any family member if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

Aplt. App. Vol. 3 at 405, 445. The exceptions to Exclusions B.2 and B.3 restore coverage for vehicles not listed on the declarations under certain ownership situations. Appellants argue that because Exclusion B.1 avoids coverage for the motorcycle (because it is not listed on the declarations), and the exceptions to Exclusions B.2 and B.3 would permit coverage for the motorcycle (because Appellant Horton did not own the motorcycle, the motorcycle was insured by the owner with another carrier, and the motorcycle was owned by a family member and available for Appellant Horton's use), there is ambiguity regarding coverage.

We first note that the language of Exclusions B.2 and B.3 expressly limits the exceptions to their respective exclusions (*i.e.*, "[t]his exclusion (B.2) does not apply . . . ."). We find that the plain language of the exceptions to Exclusions B.2 and B.3 dictates

that the exceptions only apply to their respective exclusions. We further find that this is the only reasonable interpretation of the language and that an ordinary individual purchasing an insurance policy would reasonably expect that the exceptions to Exclusions B.2 and B.3 only apply to their respective exclusions.

Despite this, Appellants argue that Colorado law dictates that this limiting language is of no effect, citing *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236 (Colo. 1992). Specifically, Appellants argue that under *Simon*, the avoidance of coverage under one exclusion and the restoration of coverage in an exception to an entirely different exclusion, automatically creates an ambiguity in the policy which must be resolved to construe coverage in favor of the insured. We disagree and find *Simon* distinguishable.

Notably, the two provisions at issue in *Simon* were located in two separate documents issued by the insurance company: the policy and the endorsements. Here, the provisions at issue all appear in the body of the policy. More importantly, however, the provisions at issue in *Simon* concern the same subject matter. Specifically, in *Simon*, Exclusion (a) in the policy provided that "this exclusion does not apply to a warranty of fitness or quality of the named insured's product . . . ." *Id*. at 240. The exclusion in the endorsement, however, provided that coverage did not apply to damage included within the products hazard exception, which encompassed damage "arising out of the named insured's products or reliance upon a representation or warranty made at any time thereto . . . ." *Id*. As the *Simon* court found, the plain language of the policy excepted from exclusion certain warranties, while the endorsement specifically excluded coverage for

8

damage arising from reliance upon a warranty. Plainly, these two provisions conflicted and could not be read in harmony.

Here, however, Exclusion B.1 deals with vehicle type, while Exclusions B.2 and B.3 deal with ownership type. Exclusion B.1 excludes all vehicles not listed on the declarations, except when they fall within one of the four listed excepted vehicle types. Exclusions B.2 and B.3, on the other hand, exclude all vehicles not listed on the declarations, except when they fall within the excepted ownership categories. Accordingly, these exclusions operate independently of one another, and coverage can be denied under any exclusion regardless of whether any other exclusion does or does not apply.

When reviewing an insurance contract, "[c]ourts should read the provisions of the policy as a whole, rather than reading them in isolation." *Curtis Park Grp., LLC v. Allied World Specialty Ins. Co.*, 124 F.4th 826, 832 (10th Cir. 2024) (citing *Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003)). Appellants, however, ask the court to review portions of the policy provisions in isolation by redacting certain language when comparing Exclusion B.1 to the exceptions to Exclusions B.2 and B.3. *See* Aplt. Horton Br. at 40, 42, 43. Reading the provisions in this manner gives the language a forced construction and essentially rewrites the plain language to manufacture a conflict. This is inconsistent with Colorado law. In reading the provisions of the policy as a whole and giving each word its ordinary meaning, as we must, we find that Exclusion B.1 does not conflict with the exceptions to Exclusions B.2 and B.3.

9

Accordingly, we find that the district court did not err in concluding that the motorcycle is excluded from coverage under the policies.

## B. Waiver and Estoppel

Appellants also argue that waiver or estoppel prevent Appellees from asserting no coverage under Exclusion B.1. Specifically, Appellants argue that USAA's five (5) year delay and Garrison's three and a half (3.5) year delay in raising no coverage under Exclusion B.1, and USAA's original reliance on Exclusion B.2, prejudiced Appellant Horton by denying him all opportunities to settle within the policy limits.

Waiver or estoppel can enforce coverage provided for under the policy but cannot be used as a means to create or extend coverage. *See Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 353 (10th Cir. 1996) (citing *Hartford Live Stock Ins. Co. v. Phillips*, 150 Colo. 349, 372 P.2d 740, 742 (1962)); *see also* 44A Am. Jur. 2d Insurance § 1502 (West Supp. 2025) ("[C]overage under an insurance policy cannot be enlarged, extended or created by waiver or estoppel so as to make the policy cover a risk not within its terms."). Accordingly, because we have determined that there is no coverage for the motorcycle under the policies, Appellants' arguments under waiver and estoppel fail.[1]

---

[1] Appellant Horton also filed a Motion to Certify Question of State Law to the Colorado Supreme Court as to the issue of waiver and estoppel. Aplt. Horton Mot. to Certify (R.23). Because we find that Appellants' arguments under waiver and estoppel fail, we also deny Appellant Horton's Motion to Certify. *See Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) ("Under our own federal jurisprudence, we will not trouble our sister state courts every time an arguably unsettled question of state law

### C. Bad Faith

#### 1. Common Law Bad Faith

Appellant Abeyta appeals the district court's ruling granting summary judgment in Appellees' favor on her common law bad faith failure to settle counterclaim.[2] Specifically, Appellant Abeyta argues that the district court erred in finding that there was no duty to settle where there was no coverage under the policies. App. Abeyta Br. at 27. Appellant Abeyta argues that this is an issue of timing and that the duty to settle should be considered in retrospect based on whether a reasonable insurer would have settled at a certain point in time. However, the district court's finding is supported by Colorado law.

"It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage." *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) (citing *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 326 (Colo. App. 1995); *M.L. Foss, Inc. v. Liberty Mut. Ins. Co.*, 885 P.2d

---

comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves.").

[2] Counsel for Appellant Abeyta was unable to pinpoint where in the briefing the duty to investigate had been raised. Oral Arg. 12:22-13:20. Upon review of the briefing, we find that the issue of failure to investigate was not properly raised on appeal and, therefore, will not be considered. *See Bronson v. Swenson*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue.").

284, 286 (Colo. App. 1994), overruled on other grounds by *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294 (Colo.2003); *Jarnagin v. Banker's Life and Cas. Co.*, 824 P.2d 11, 15 (Colo. App. 1991)).  "In other words, without a breach, there is no bad faith breach."  *Barry v. State Farm Mut. Auto. Ins. Co.*, No. 23-CV-00849-DDD-SKC, 2024 WL 659510, at *3 (D. Colo. Jan. 16, 2024) (citing *MarkWest Hydrocarbon*, 558 F.3d at 1193).  During oral argument, counsel for Appellant Abeyta conceded that there was no authority holding that there is a duty to settle a noncovered claim.  Oral Arg. at 13:20-13:46.  Because we have found that there is no coverage afforded under the policies, and Appellant Abeyta's claimed damages flow from a denial of coverage, Appellant Abeyta's common law bad faith claim must fail.

### 2.  Statutory Bad Faith

Appellant Horton argues that the district court erred in dismissing his statutory bad faith claim under C.R.S. § 10-3-1115.  Specifically, Appellant Horton argues that even in the absence of coverage, the duty to defend is "an independent covered benefit which USAA and Garrison unreasonably delayed and denied . . . ."  App. Horton Br. at 65-66.

Section 10-3-1115 of the Colorado Revised Statutes states that "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."  C.R.S. § 10-3-1115(1)(a).  Colorado courts have consistently found that where no benefits are owed under the policy, then payment of benefits cannot, as a matter of law, have been unreasonably delayed to the insured or denied by the insurer.  *See TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2018) (to prevail on statutory

12

bad faith claim, the plaintiff must show that "benefits were owed under the policy");

*Lucia Fam. Tr. v. Am. Fam. Mut. Ins. Co.*, S.I., No. 23-CV-02156-NYW-TPO, 2025 WL

2735536, at *8 (D. Colo. Sept. 25, 2025) (quoting *Keller v. State Farm Mut. Auto. Ins.

Co.*, No. 22-cv-00474-CMA-KAS, 2023 WL 6048790, at *9 (D. Colo. Sept. 15, 2023),

recommendation adopted by 2023 WL 7458357 (D. Colo. Oct. 2, 2023)).

Appellant Horton argues that under *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d

1083 (Colo. 1991), a duty to defend can still exist even if there is no coverage and that

the duty to defend is required if coverage is "arguable."  App. Horton Br. at 66 (citing

Aplt. App. Vol. 3 at 377; Vol 11 at 1581-1584 to argue that Appellees conceded that

coverage was "fairly debatable").  However, *Hecla* also held that "[a]n insurer's duty to

defend arises when the underlying complaint against the insurer alleges any facts that

might fall within the coverage of the policy."  811 P.2d at 1089.  *Hecla* further found that

"[t]he determination of a duty to defend . . . depends on the terms in the insurance policy,

and the interpretation of those terms based upon the principles of contract interpretation."

*Id*. at 1090.

We do not find that Appellees conceded that coverage under the policies was

arguable.  Rather, Appellees asserted their defense that Appellants' bad faith

counterclaims were barred by the policies.  Aplt. App. Vol. 3 at 376.  Upon review of the

underlying complaint and in interpreting the terms of the insurance policy, the district

court concluded that there was no coverage afforded under the policies.  As explained

above, we likewise find that there was no coverage afforded under the policies and,

therefore, Appellant Horton was not entitled to a defense.  Accordingly, Appellant Horton's statutory bad faith claim fails.

### III.     CONCLUSION

For the above stated reasons, we affirm the district court's order granting summary judgment in Appellees' favor.

Entered for the Court

John F. Heil, III
Chief District Judge